SCHOOL DISTRICT No. 5 v. THE FIRST NATIONAL
BANK OF WABASH.

**No. 12,491.** ( 66 Pac. 630.)

SYLLABUS BY THE COURT.

1. SCHOOL-DISTRICT WARRANTS—*Limitation of Actions.* Orders
were drawn by the proper officers of a school district on the treas-
urer for the payment of money out of a designated fund. In an
action against the district on the warrants, it appeared that at no
time since the debt was created had there been any money in the
treasurer's hands applicable to the payment of the orders. *Held,*
that the school district was estopped from interposing the defense
that the action was barred by the statute of limitations.

2. ———— *Statute Considered.* The effect of sections 6011 and
6012 of the General Statutes of 1901, requiring the registration
of warrants, considered.

Error from Seward district court; WM. EASTON
HUTCHISON, judge. Opinion filed November 9, 1901.
*In banc.* Affirmed.

*W. A. Frush,* and *H. F. Mason,* for plaintiff in
error.

*T. A. Scates, Reeves & Kirkpatrick,* and *S. S. Ash-
baugh,* for defendant in error.

The opinion of the court was delivered by

SMITH, J.: On January 3, 1889, the director and
clerk of school district No. 5 of Seward county exe-
cuted and delivered to John W. Hixon & Co. four
warrants on the school-district treasurer. They are
identical in dates and amounts. The following is a
copy of one of them :

"No.      OFFICE OF SCHOOL DISTRICT CLERK.
                              January 3, 1889.
"Name of Treas. M. L. Trout.
"P. O. address Springfield, Kansas.
  "Treasurer school district No. 5 of county of Sew-
ard, state of Kansas : Pay to John W. Hixon & Co.

or order, on or before July 1, 1889, the sum of two hundred dollars, with interest at twelve per cent. per annum from date till paid, for material and labor furnished on schoolhouse, out of any funds in your possession raised or appropriated for such purpose.

$200.      JOSEPH WAGGONER, *District Clerk.*
           H. P. LARRABEE, *Director.*"

The orders were presented for payment to the school-district treasurer on September 9, 1890, and were indorsed by him "Not paid for want of funds." There has never been any money in the hands of the treasurer to pay these warrants. This action was commenced in the court below on March 22, 1895, by defendant in error, the assignee and holder of the warrants.

The sole question to be decided is whether the action was barred by the statute of limitations. If the statute began to run on July 1, 1889, when the orders were payable, then the time for the commencement of an action expired on July 1, 1894, over eight months before suit was begun. If, however, the time is to be counted from the date of presentation, the action was commenced less than five years from that time. If the failure to provide funds to meet the payment of the obligations prevents the district from interposing the defense it has set up, then the due dates of the warrants and the time of the demand for payment become immaterial.

It has been decided by this court that a city may anticipate the revenue of the year by issuing warrants payable at such time during the year as the taxes will probably be collected, and that such warrants are " simply drafts on the revenue then anticipated." (*City of Burrton v. Savings Bank*, 28 Kan. 390.) We find no limitation on the power of school-district boards which prevents them from doing likewise.

Under sections 6011 and 6012 of the General Statutes of 1901, warrants not paid for want of funds must be registered in the regular order of their presentation and must be paid in such order, and when sufficient money is collected the treasurer must set it apart to pay them in turn. Statutes of limitation give the defendant a right to resist the payment of a demand based upon some act of negligence or omission of the plaintiff. But, in the case at bar, the defendant would found its right to defeat the claim sued on by asserting its own negligence. It has never set the machinery of the law in motion to collect the money required to meet its obligations. It has remained since the debt was contracted in a continued state of insolvency created by its own act. We need not do more than to quote the language of Mr. Justice Brewer, in *Lincoln County v. Luning*, 133 U. S. 529, 532, 10 Sup. Ct. 363, 364, 33 L. Ed. 766, 767 :

"The coupons, which by the general limitation law would have been barred, were presented, as they fell due, to the treasurer for payment, and payment demanded and refused, because the interest fund was exhausted. Thereupon the treasurer registered them as presented, in accordance with the act of 1877, and from the time of their registration to the commencement of this suit there was no money in the treasury applicable to their payment. This act providing for registration and for payment in a particular order was a new provision for the payment of these bonds, which was accepted by the creditor, and created a new right upon which he might rely. It provided, as it were, a special trust fund, to which the coupon holder might, in the order of registration, look for payment, and for payment through which he might safely wait. It amounted to a promise on the part of the county to pay such coupons as were registered, in the order of their registration, as fast as money came into the interest fund ; and such promise was

by the creditor accepted; and when payment is provided for out of a particlar fund to be created by the act of the debtor, he cannot plead the statute of limitations until he shows that that fund has been provided.''

See, also, *Underhill v. Trustees of the City of Sonora*, 17 Cal. 172; *Freehill v. Chamberlain*, 65 id. 603, 4 Pac. 646.   In the former case the court said:

''The legislative acts, then, recognize the debt, and make provision for its payment.   This is enough to withdraw the case from the operation of the statute. It is equivalent to a trust deed by the city, setting apart property out of which the money due was to be paid at a given time, if not sooner paid, upon a claim acknowledged to be an outstanding debt; and we cannot conceive of any principle of law or justice which would hold the claim to be barred by the statute merely because the creditor waited after this for his money.''

In the other case it was held:

''Where a statute provides for the issuing of bonds of a city, with interest coupons payable as fast as money should come into the treasury from special sources designated by the act, the statute of limitations does not commence to run against the coupons until the money is received in the treasury in accordance with the terms of the act.''

This time warrant, as stated in *City of Burrton v. Savings Bank*, supra, being simply a draft on anticipated revenue, and there being no realization by the receipt of the expected fund by the school district, the latter ought not, in good conscience, to assert as an excuse its failure to receive sufficient money with which to pay when it had ample power, by the levy of taxes, to collect it.

This view of the case dispenses with the necessity for any discussion of the question whether the stat-

ute of limitations began to run on the warrants at the date they were made payable by their terms, or from the time of the demand made for their payment.

The judgment of the court below will be affirmed.