## THE CITY OF GALVESTON v. P. J. LOONIE.

### (Case No. 1258.)

1. CITY CHARTER — CONSTRUCTION OF SIDEWALKS.— The city charter of the city of Galveston of 1871 prohibited the borrowing for *general purposes* of more than fifty thousand dollars. *Held,* that this prohibition did not limit the power of the city to borrow money, or create a debt for a larger amount for the improvement of its sidewalks, because:

    1. Improvements of sidewalks, the ultimate cost of which must be defrayed by the lot owner whose property is benefited, are made for a special, and not a general purpose.

    2. The intention of the city charter was to empower the council to cause the improvement of sidewalks to be made at the expense of the city, which was ultimately to be assessed against the lots benefited.

    3. The express power being granted to construct sidewalks, for which the lot was ultimately responsible, the city had the implied authority to contract such obligations as were necessary to execute the power.

2. CASES APPROVED.—Hitchcock v. Galveston, 6 Otto, 349, approved.

3. LIMITATION.— Limitation on a coupon attached to a bond begins to run from the date when the coupon is due, and not from the maturity of the bond.

APPEAL from Galveston. Tried below before the Hon. Wm. H. Stewart.

Suit by P. J. Loonie against the city of Galveston, appellant, on one hundred and thirty-five "coupons." He

alleged that in consideration of materials furnished and work and labor performed by him and his assignors under contract with appellant, in and about the erection of its sidewalks, and the filling up of certain of its lots and blocks, the city made, executed and delivered to him and his assignors its sixteen bonds, signed by the mayor and countersigned by its treasurer, and sealed by its corporate seal. That those bonds were authorized by appellant to be issued as and for its obligation to pay for such materials, work and labor, by ordinances passed by it on August 19 and December 3, 1873, entitled respectively: "An ordinance authorizing the issuance and sale of two hundred and fifty thousand dollars of the bonds of the city of Galveston, for the purpose of improving sidewalks, by filling, raising and curbing the same;" and, "An ordinance authorizing the issuance and sale of fifty thousand dollars of the bonds of the city of Galveston, for the purpose of filling up 'Hitchcock's bayou,' and for other like sanitary purposes, and to create a fund to pay the interest and principal of the said bonds."

Appellee further alleged that the bonds, by their terms, bore interest at ten per cent. per annum from their dates, and that at the times of their execution and delivery they had attached thereto a number of coupons for interest, accruing and to accrue thereon, from their dates, respectively, inclusive, which were also executed by appellant and delivered to appellee and his assignors; that the bonds and coupons issued and delivered to his assignors, were, a short time after such issuance, sold and delivered to him for a valuable consideration; and that all of the coupons sued on were due and unpaid, and, at their maturity, had been presented to appellant for payment, and that they had never been detached from the bonds.

It was further alleged that the materials supplied and labor and work performed for appellant by appellee and his assignors, was before the execution and delivery of

the bonds and coupons, and that the bonds and coupons, with the exception of a small proportion thereof, bore date and were executed and delivered in the year 1874, the remainder in January, February and March (first day), 1875.

Prayer for judgment "in the full amount of said coupons, with interest, for costs of suit, and for such other and further relief, general and special," as, in law and equity, the court would award him.

Appellant answered:

*First.* General demurrer.

*Second.* Special exceptions as follows:

1. To the allegations of appellee, as to power and authority of appellant to contract for the erection and construction of its sidewalks, and for the filling up, draining or regulating any lot or lots, etc., because said allegations are unauthorized by appellant's charter of May, 1871, and are otherwise unfounded in law.

2. To the allegations as to the power and authority of appellant, under its charter of 1871, to issue its bonds, or other obligations in writing, to pay for materials furnished and work and labor performed, for the construction of sidewalks, and the filling up of low places; because said allegations are not authorized or sanctioned by any provision of said charter. . . .

6. To the allegations which claim of and from appellant payment for work and labor done by appellee and his assignors, because it appears, from the petition, that any claims or accounts for such material, and work and labor, were barred by the statute of limitations.

*Third.* General denial.

*Fourth.* Special plea.

2. That appellant had no power and authority under its charter to issue bonds and contract debts for the purpose of erecting sidewalks and the filling up of low places, and that the alleged issuance of bonds by appel-

lant, as set out in said petition, was *ultra vires* and void, and that appellant was not bound by such unlawful bonds.  .  .  .

4. That if appellant ever became indebted to appellee or his assignors in any sum on account of work and labor done and materials furnished appellant, as set out in said petition, that such indebtedness was barred by the statute of limitations, and no recovery could be had thereon.

Demurrer and exceptions overruled. Judgment for appellee.

*R. V. Davidson,* for appellant.

I. The petition discloses that appellee and his assignors contracted with appellant for certain purposes, and that such contracts were to be satisfied by the issuance and delivery of the bonds described in said petition. Such contract can, or could not be performed without such bonds being valid; such bonds are invalid, and said contracts to be satisfied therewith are absolutely void, and the court erred in overruling the demurrer. Hitchcock *v.* Galveston, 2 Woods, 272, 287; Union Pacific R. R. *v.* Lincoln County, 3 Dill., 300; State *v.* Swift, 11 Nev., 167.

II. The charter of the city of Galveston of May 16, 1871, nor any other law, gave to appellant, or its officers, any express or implied power to enact said ordinances, or thereunder to issue and deliver said bonds and coupons for the purposes set forth in said petition; and the court erred in overruling said exception, and holding that appellant was bound by such unlawful bonds and coupons. Said charter gave to appellant no power to issue said bonds and coupons, and the alleged issuance and delivery. thereof for said alleged objects was in violation of the spirit and letter of said charter. · Charter of City of Galveston, May 16, 1871, title 10, art. 30; id., title 4, art. 3, secs. 2, 3, 8; id., title 8, art. 8, sec. 1; id., titles 5 and 6, entitled "Taxation" and the "Collection of Taxes;"

Cooley's Const. Lim., 3d ed., pp. 194–196; 1 Dill on Mun. Corp., pp. 173–176; id., sec. 393; id., secs. 610, 653, 654; Williams v. Davidson, 43 Tex., 1–34; Pye v. Peterson, 45 Tex., 312–315; City of Bryan v. Page, 51 Tex., 532–536; Hitchcock v. City of Galveston, 2 Woods' U. S. C. C., 272–287; S. C., 3 Woods' U. S. C. C., 269–272; Police Jury v. Britton, 15 Wall. (U. S.), 566–573; Mayor v. Ray, 19 Wall. (U. S.), 468–475; Gause v. City of Clarksville (opinion by Dillon, J.), 1879, "The Reporter," p. 519; Galveston v. Hitchcock, 96 U. S. (6 Otto), 341–353; Rogers v. Burlington, 3 Wall., 666; Seybert v. Pittsburg, 1 Wall., 272; Buchanan v. City of Litchfield (U. S. S. C.), October Term, 1880; Chicago Legal News, December 18, 1880; Heard v. Providence Ins. Co., 2 Cranch, 169, affirmed; Rogers v. Burlington, dissenting opinion, Field, J., 3 Wall., pp. 668–669; Dillon on Municipal Bonds, 9–15; Middleton v. Alleghany Co., 37 Penn. St., 237; Hackettstown v. Swackhamer, 37 N. J. Law, 191; Burnes v. Mayor and Council of Atchison, 2 Kansas, 488, 489; Lippincott v. Pana, 92 Ill., 54; Middleport v. Ætna Life Ins. Co., 82 Ill., 662; Lucas, Turner & Co. v. San Francisco, 7 Cal., 463; Annapolis v. Harwood, 32 Md., 480; Rupert v. Baltimore, 23 Md., 193; Tarrfield v. Radcliff, 20 Iowa, 396; Lake v. Williamsburg, 4 Denio, 520; McCullough v. Mayor of Brooklyn, 23 Wend., 458; Rhinelander v. Mayor, 21 How. Pr., 304; Matter of Turfler, 44 Barb., 46; Baldwin v. Oswego, 1 Abb., 62; New Albany v. Sweeny, 13 Ind., 245; Roeck v. Newark, 33 N. J. Law, 129; Bateman v. Mid. Wales R. R. Co., Common Law Reports (1st Common Pleas), 499.

*F. Charles Hume*, for appellee.

I. It appearing from the petition, that, according to its contracts, appellant promised to pay for the work done by appellee and his assignors at dates subsequent to the completion of the work, and to pay semi-annual interest

on the amount of the debt until its maturity, and evidenced said promise by executing the bonds described and the coupons sued on after the work contracted for had been fully completed and accepted, appellee's right of action for the indebtedness so evidenced was not barred in either two or four years; and limitation would not begin to run against it until the maturity of the bonds to which said coupons were attached. De Cordova v. Galveston, 4 Tex., 482 (referring with approval to 19 Vt., 467; City v. Lamson, 9 Wall., 483–4; City of Lexington v. Butler, 14 Wall., 296–7; Clark v. Iowa City, 20 Wall., 589; Green's Brice's Ultra Vires, 2d Am. ed., 271; Clemons on Corp. Secur., 65; Ferry v. Ferry, 2 Cush., 99).

II. The court did not err in rendering judgment for the amount of the coupons, that is, for the sums shown to be due on the face of the coupons, and interest at eight per cent. on such sums. Pasch. Dig., art. 3940; Rev. Civ. St., art. 2976; San Antonio v. Lane, 32 Tex., 415 (overruled in 34 Tex., 49, but not on this point); Cromwell v. Sac Co., 6 Otto, 60–2; Aurora City v. West, 7 Wall., 105; Gelpeke v. Dubuque, 1 Wall., 178, 206; Hollingsworth v. Detroit, 3 McLean, 472; 2 Daniels' Neg. Inst., § 1513; Green's Brice's Ultra Vires, 2d Am. ed., 270; North Penn. R. R. Co. v. Adams, 54 Penn. St., 94; Mills v. Town of Jefferson, 20 Wis., 56; Va. v. C. & O. Canal Co., 32 Md., 504; Nat. Ex. Bank v. Hart., Pr. & T. R. Co., 8 R. I., 875; Cond. Mut. L. Ins. Co. v. C., C. & C. R. R. Co., 41 Barb., 9.

III. Conceding that appellee's right of action is solely on the bonds and coupons, I affirm that these are valid obligations and justify the judgment appealed from. Charter of 1871, secs. 2, 3, 4, 8 of art. 3, title 4; sec. 1, art. 10, title 3; sec. 1 of art. 8, title 8; sec. 1 of art. 1, title 8. This proposition is, in effect, conceded even by Judge Dillon, in a case much relied on by appellant: Cause v. City of Clarksville (5 Dillon), 7 Reporter, 521–2. Sec. 1

of art. 2, title 8; secs. 36, 47, 53 of art. 3, title 4; sec. 1 of art. 1, title 1; compare sec. 2 of art. 3, title 4, with sec. 28 of act of August 2, 1876, present charter; and in same connection, as to rule of interpretation, see United States v. Freeman, 3 How., 565; Hitchcock v. Galveston, 6 Otto, 348-9; Mayor v. Ray, per Hunt, J., 19 Wall., 483; S. C., per Bradley, J., 477-8; Whitewater Valley Canal Co. v. Vallette, 21 How., 424; Seybert v. Pittsburg, 1 Wall., 272; Rogers v. Burlington, 3 Wall., 666-7; 2 Dan. Neg. Inst., §§ 1529-1531; City of Williamsport v. Commonwealth, 84 Penn. St., 487; Commonwealth v. Pittsburg, 41 id., 279; Bridgeport v. Railroad Co., 15 Conn., 475, 501; City of Galena v. Corinth, 48 Ill., 423, approved in Burr v. Carbondale, 76 id., 474; Keeley v. Mayor, 4 Hill, 263; Ketchum v. City, 14 N. Y., 364, approved in Petersen v. Mayor, 17 id., 452; Smith v. City of Newbern, 70 N. C., 19; Bank v. Chillicothe, 7 Ohio, 354; Mills v. Gleason, 11 Wis., 470; Douglass v. The Mayor, 5 Nev., 147; First Mun. of New Orleans v. McDonough, 2 Rob. (La.), 244, 250-1; Mullarky v. Cedar Falls, 19 Iowa, 21; Black v. Cohen, 52 Ga., 621; Sheffield School Township v. Andress, 56 Ind., 157; Clark v. School Dist., 3 R. I., 199.

GOULD, ASSOCIATE JUSTICE.— The right of the plaintiff to his recovery depends on the power of the city of Galveston to construct sidewalks and to give its valid written obligation to pay therefor at a future day. The question is thus stated, because we are of opinion that the instruments set out by plaintiff may bind the city to the payee or his assignee, although they may not have been valid negotiable instruments, because of the want of power in the city to issue negotiable or commercial paper for such purposes. Whether this latter power was wanting or not we do not determine.

The charter empowers the city council to "construct sidewalks," and in the same section says: "The cost of

the construction of sidewalks shall be defrayed by the owners of the lot or part of lot or block fronting on the sidewalk; and the cost of any sidewalk constructed by the city shall be collected, if necessary, by the sale of the lot or part of lot or block on which it fronts, together with the cost of collection, in such manner as the city may by ordinance provide; and a sale of any lot, or part of lot or block, to enforce the collection of the cost of sidewalks, shall convey a good title to the purchaser, and the balance of the proceeds of sale, after paying the amount due the city and cost of sale, shall be paid by the city to the owner." Charter, sec. 8, art. 111, title 4.

It is claimed that under this provision of the charter, the city had no power to undertake the construction of sidewalks on its general credit, but could only do so by defraying the present current cost thereof by obtaining the same from the owners of the abutting lots. If a sidewalk thus paid for could properly be said to be "constructed by the city," there could certainly be no "amount due the city" to be paid out of the proceeds of sale. These expressions in the charter show clearly that the design was, as in case of filling lots for sanitary purposes, to empower the council to cause the improvement to be made "at the expense of the city," although that expense was to be assessed against the lot or lots benefited. Charter, title 8, art. 8, sec. 1.

The express power is granted to construct sidewalks, and the terms of the grant show that it was contemplated that the city would primarily incur the expense which ultimately was to be borne by the owner of the abutting lot. This was an extraordinary expense, and, like other such expenses, might involve the creation of a debt and the execution of an instrument evidencing the amount of that debt and the time of the promised payment or payments. 1 Dillon on Mun. Corp., sec. 397. Speaking of municipal corporations, Dillon in his work

on that subject says: "To the extent necessary to execute the special powers and functions with which it is endowed by its charter, there is an implied or incidental authority to contract obligations." 1 Dillon, secs. 371–2. The charter of 1871 contained no express limitation on the power of the city to incur indebtedness, other than the provision, "That the city shall not borrow for general purposes more than $50,000." Tit. 4, art. 3, sec. 2. In the case of Hitchcock v. Galveston, 6 Otto, 349, it was held that sidewalk improvement was not a "general purpose," and that this provision did not limit the power of the city to borrow or create a debt for that purpose. We concur in that construction. Improvements, the ultimate cost of which is to be defrayed by the owners of abutting lots, because those lots are specially benefited, might properly be said to be made for a special, as distinguished from a general purpose. The ultimate reimbursement of the city being secured by a lien on the abutting lots, there would be less reason for limiting the power to borrow for such a purpose than for general purposes, where the city was unsecured. In the case of Hitchcock v. Galveston, just cited, the power of the city to contract indebtedness under this section of its charter was upheld. Numerous authorities tending to the same conclusion are collected, and the substance of each most conveniently stated in the carefully prepared written argument of counsel for appellee. Without intending to adopt these authorities in so far as they may assert a general power to issue commercial paper, we are satisfied with the conclusions reached by the supreme court of the United States in the case of Hitchcock v. The City.

Adhering, as we do fully, to the doctrine that any fair or reasonable doubt concerning the existence of a power in a municipal corporation is to be resolved by the courts against the corporation (see Williams v. Davidson, 43 Tex.), we are of opinion that the city of Galveston

under the charter had power to incur indebtedness in con-structing sidewalks and in making sanitary improve-ments, and to execute written contracts specifying in what installments and at what times that indebtedness was to be paid.   That the power to burden the city with debt even for legitimate purposes is dangerous, and might well be withheld, is true.   The terms of the charter, how-ever, do not justify us in holding that the city council misconstrued their powers when they assumed to bind the city to pay for the improvements at a future day. An examination of the general act relating to cities and towns, enacted in 1875, and incorporated into the Revised Statutes, fails to show that the policy of the state is to deny to municipal corporations the power to create debts. R. S., arts. 419, 420.   See also Constitution, art. XI, sec. 7.   In the present condition of our legislation, we do not think ourselves called upon to disregard the great weight of authority because we may deem it unwise to entrust city councils with power to create large debts.

It follows from these views, that the court did not err in giving judgment for the principal and interest of the coupons or instruments sued on, unless the defense of limitation be applicable to such as had been due over four years.   Appellee claims that limitation would not begin to run until the maturity of the bonds to which the coupons remained attached.   That question has been de-cided otherwise in the recent case of Amy v. Dubuque, 98 U. S., 470.   We regard that decision as sound in prin-ciple and are willing to follow it.

The judgment will be reversed and reformed so as to exclude from the recovery those coupons which had been due over four years at the date of the institution of this suit.

REVERSED AND REFORMED.

[Opinion delivered March 18, 1881.]